IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| State Auto Property and Casualty Insurance Company, | Civil Action No. 0:11-cv-00929-CMC |
| Plaintiff, | |
| vs. | OPINION AND ORDER |
| Thomas and Sheri Howard; and James Evans and Kenny Evans d/b/a Evans Septic and Backhoe Service, | |
| Defendants. | |

Through this action, Plaintiff State Auto Property and Casualty Insurance Company ("State Auto") seeks a declaration that it has no duty to defend or indemnify its insured, Defendant Kenny Evans, who does business as Evans Septic and Backhoe Services ("Evans"), in an action pursued in state court ("State Action") by Defendants Thomas and Sheri Howard ("the Howards").[1] The matter is before the court on cross-motions for summary judgment filed by State Auto and the Howards. For the reasons set forth below, State Auto's motion is granted and the Howards' motion is denied, resolving all claims remaining in this action.

**SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] The complaint names both James Evans and Kenny Evans, doing business as Evans Septic and Backhoe Service, as the insured Defendants. State Auto subsequently filed an affidavit of default which indicates it is now proceeding solely against Kenny Evans, doing business as Evans Septic and Backhoe Service, who is in default. Dkt. No. 66. State Auto consents to dismissal without prejudice of James Evans, who has not been served. *Id*. The Howards have not indicated any objection to dismissal of James Evans. The court, therefore, dismisses the claims against James Evans without prejudice.

56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Rule 56(c)(1) provides as follows:

(1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

  (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials; or

  (b) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

## FACTS

The facts relevant to the cross-motions are essentially undisputed given the nature of the action and status of the underlying State Action. Through that action, the Howards seek damages

relating to an allegedly defective septic system, which Evans installed on the lot of a builder-owned home. The Howards bought the home from the builder in August 2007. At the time of the Howards' purchase, the home was complete except for a few punch-list items.

Within their first year of ownership, the Howards noticed excessive moisture in their yard as well as unpleasant smells. They eventually attributed the problems to the septic system and began discussions with the builder, Evans, and the South Carolina Department of Health and Environmental Control ("DHEC") in an effort to resolve the problem.

When their concerns were not resolved by these discussions, the Howards filed the State Action alleging causes of action founded on contract or warranty theory as well as claims for negligence. They subsequently entered a confidential settlement with DHEC. Evans failed to answer the complaint in the State Action and was held in default. A motion for relief from that default is currently pending in the State Action.

## MATTERS IN DISPUTE

Concessions in the parties' memoranda substantially narrow what is at issue. Most critically, although the Howards maintain that they have "not abandoned any element of damages[,]" they concede that they "do not contend that there is coverage for warranty or contract" or "for repair and/or replacement of the septic system." Dkt. No. 62 at 2. The Howards also concede that "the settlement with DHEC will result in a credit against the total damages awarded" in the State Action. *Id.*[2]

The Howards describe their remaining damage claims as arising from "the failure of the septic system[, which] continuously exposed the remainder of [their] property to untreated sewage

---

[2] In light of these concessions, the court need not address State Auto's arguments that contract-based claims and claims for replacement of Evans' product/work are not covered.

3

effluent." Dkt. No. 62 at 3. They assert that this exposure "caused physical injury to [their] lot and caused loss of use of both the lot and the house." *Id.* at 4. More specifically, the Howards assert that: (1) they "had to treat the standing septic effluent with lime to keep the odor down"; (2) their "small daughter could not use the back yard"; (3) their "plan to install a pool was thwarted"; and (4) they were "unable to finish the lower portion of the house to allow Ms. Howard to care for her parents." *Id.* at 4.[3]

In their response to State Auto's motion for summary judgment, the Howards conclude that "[a]ll of these circumstances resulted from the physical injury to the property caused by the negligent installation of the septic system" and are "covered under either sub-paragraph a. or b. of the [insurance policy's] definition of property damage." *Id.* In support of their cross-motion for summary judgment, the Howards state "that "[t]he damages remaining to be addressed relate to the loss of use and enjoyment of [their] yard and residence, and the stigma to the house from the septic problems." Dkt. No. 55-1 at 4 (also stating that "[t]he Howards' settlement with DHEC covered the repair and replacement of the defective system.").

State Auto characterizes the Howards' remaining claims for damages either as loss of use damages, which it argues are excluded under the "impaired property" provision of the policy, or pure economic loss (diminution in value due to stigma), which it argues is not recoverable under the terms of the policy as construed in South Carolina. For reasons explained below, the court agrees

---

[3] The Howards' characterization of their injuries as "physical injuries" is not controlling. Instead, the court looks to their specific descriptions. Three of the claimed categories, inability to use the yard and delay in installing a pool and finishing the lower portion of the house, are facially loss of use. In context, the Howard's "application of lime" falls within the same category because it refers to measures taken to minimize or eliminate the loss of use. The Howards do not, in any event, claim that they suffered any physical injury to property which was not corrected by replacement of the septic system.

4

on both points, and declines to reach State Auto's other arguments.[4]

## RULES OF CONSTRUCTION

When construing an insurance policy under South Carolina law, the court construes "clauses of inclusion" broadly, and "clauses of exclusion" narrowly. *See, e.g., McPherson v. Mich. Mut. Ins. Co.*, 426 S.E.2d 770, 771 (S.C. 1993). Thus, where the words of a policy are capable of two reasonable interpretations, the court adopts the construction which is most favorable to the insured. *Forner v. Butler*, 460 S.E.2d 425, 427 (S.C. 1995).

In all other respects, insurance policies are interpreted according to the same rules of construction applicable to other types of contracts. *Auto-Owners Ins. Co. v. Carl Brazell Builders, Inc.*, 588 S.E.2d 112, 115 (S.C. 2003) ("*Brazell*"). Thus, the court "must give policy language its plain, ordinary and popular meaning. . . . When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." *Id.*; *see also B.L.G. Enterprises, Inc. v. First Fin. Ins. Co.*, 491 S.E.2d 695, 697 (S.C. Ct. App. 1997) ("The construction of a clear and unambiguous contract is a question of law for the court." ), *aff'd*, 514 S.E.2d 327 (S.C. 1999). The court's "duty is limited to the interpretation of the contract made by the parties, regardless of its wisdom or folly, apparent unreasonableness, or failure [of the parties] to guard their interests carefully." *B.L.G. Enterprises*, 514 S.E.2d at 330 (internal quotation marks omitted).

---

[4] As noted above, two of State Auto's arguments are moot in light of the Howards' concessions. State Auto makes two other arguments that are not considered here. The first of these, that coverage is precluded because Evans failed to give timely notice of the claim, is arguably precluded by State Auto's failure to rely on this basis for denial of coverage in the complaint. It may also be abandoned in light of State Auto's failure to address the point on reply. The second, which rests on a recent state court decision regarding the time of occurrence, is arguably untimely as it was raised only on reply. This ground may also raise factual issues regarding the time of occurrence. In any event, the court cannot resolve the motion on this basis without further briefing.

While exclusions are narrowly construed in favor of coverage, "[c]ourts may not torture the ordinary meaning of language to extend coverage expressly excluded by the terms of the policy." *S.C. Mun. Ins. & Risk Fund v. City of Myrtle Beach*, 628 S.E.2d 276, 278 (S.C. Ct. App. 2006). Moreover, "insurers have a right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or a statutory prohibition." *S.C. Farm Bureau Mut. Ins. Co. v. Dawsey*, 638 S.E.2d 103, 104-05 (S.C. Ct. App. 2006).

**DISCUSSION**

The damages the Howards seek from Evans through the State Action fall into two categories: damages for diminution of value of their home due to any stigma which may attach to the now-resolved septic problems; and damages for loss of use and enjoyment of their yard and home for the period before the septic problems were resolved. For reasons explained below, neither category of damage is covered.

**I.     Diminution in Value**

Under South Carolina law, which follows the majority rule, "diminished value of tangible property does not constitute property damage within the meaning of [Commercial General Liability ("CGL")] polices which define property damage as physical injury." *Auto-Owners Ins. Co. v. Carl Brazell Builders, Inc.*, 588 S.E.2d 112, 116 (S.C. 2003) (holding CGL policy did not cover claims that homes were of lesser value because they were built on polluted property). To the extent the Howards seek damages for diminution in value of their home based on any stigma attached to the prior difficulties with the (now replaced) septic system, those damages would not be covered under the policy.[5]

---

[5] State Auto makes this argument in its opening memorandum. Dkt. No. 57-1 at 14. The Howards do not specifically mention (or offer support for allowing) stigma or other diminution of

**II.     Loss of Use and Enjoyment**

The policy issued to Evans covers "property damage" which is defined as including "[l]oss of use of tangible property that is not physically injured." Policy § V ¶ 17. The court assumes without deciding that this definition encompasses the Howards' claim for loss of use of their home and yard due to effluent from the allegedly defective septic system. Thus, the claimed loss of use falls within the general scope of coverage of the policy.

Coverage is, however, subject to various exclusions including an exclusion for "impaired property," which reads as follows:

> **m.     Damage To Impaired Property or Property Not Physically Injured**
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work";
>
> * * *
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental injury to "your product" or "your work" after it has been put to its intended use.

Policy Coverage A. ¶ 2. m.

8.     "Impaired property" means tangible property, other than "your product" or

---

value damages in their response to State Auto's motion. *See* Dkt. No. 62 at 2-4. They, nonetheless, state that they "continue to assert claims for damages related to the failure of the septic system, the remediation of the septic system and all consequential damages related to the failure of the septic system" (subject to their previously stated concessions including disavowal of pursuit of damages for the replacement of the system itself). *Id.* The Howards also note that the "policy covers the damage to other property, including loss of use," and allege that the effluent, which they treated with lime, constitutes "physical injury" to property. *Id.* Despite these references to other possible damages, the Howards specifically address only damages for loss of use.

The Howards' only mention of stigma (or diminution of value) damages is found in their memorandum in support of their cross-motion for summary judgment. Dkt. No. 55-1 at 4. This memorandum does not, however, suggest any legal basis for coverage of such damages.

7

        "your work"; that cannot be used or is less useful because:

a.     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.     You have failed to fulfill the terms of a contract or agreement;

*if such property can be restored to use by:*

a.     *The repair, replacement, adjustment or removal of "your product" or "your work";* or

b.     Your fulfilling the terms of the contract or agreement.

Policy § V ¶ 8 (emphasis added).

    State Auto maintains and the Howards do not dispute that their septic system has been repaired or replaced, resolving any ongoing problems. Thus, the Howards' "loss of use" of their yard and home was resolved (that is, the "property was restored") by replacement of Evans' product or work. It follows that the loss of use was the result of "impaired property" under the plain language of the relevant definition (Policy § V ¶ 17) and is excluded under the plain language of the impaired property exclusion (Policy Coverage A ¶ 2.m.) unless the exception from the exclusion applies. *See Brazell*, 588 S.E.2d at 115 (court "must give policy language its plain, ordinary and popular meaning. . . . When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used.").

    Because the exception to the impaired property exclusion is a clause of inclusion (coverage), the court construes it broadly. *See, e.g., McPherson*, 426 S.E.2d at 771. This exception applies where "the loss of use of other property [arose] out of sudden and accidental injury to '[Evans] product' or '[Evans] work' after it has been put to its intended use." Policy Coverage A ¶ 2. m. Despite arguing that this exception applies, the Howards do not point to any allegation or evidence

8

that the problems with the septic system arose "out of sudden and accidental injury" to the septic system. Instead, they allege that the system itself was defective from the outset which caused "continuous expos[ure] . . . to untreated sewage effluent." Dkt. No. 62 at 3. These allegations do not fit within even a broad reading of the exception.[6] *See Auto-Owners Ins. Co. v. Rhodes*, 682 S.E.2d 857, 870-71 (S.C. Ct. App. 2009) (finding "sudden and accidental" exception applied where commercial billboard fell into a roadway).

The Howards also argue that construing the impaired property exclusion to preclude coverage with respect to their claims would make "sub-paragraph b. of the definition of property damage meaningless." Dkt. No. 62 at 4. The court disagrees. Sub-paragraph b. covers "[l]oss of use of tangible property that is not physically injured." The impaired property exclusion limits application of sub-paragraph b. only where the loss of use can be resolved by repair of the insured's work or product. The exclusion does not, therefore, render sub-paragraph b. of the property definition meaningless.

## CONCLUSION

For the reasons set forth above, the court concludes that the remaining categories of damages sought by the Howards in the State Action (loss of use and stigma injuries/diminution in value) are

---

[6] In their response to State Auto's motion, the Howards note the existence of the exception and quote it. They then assert that their "loss of use and other damages . . . do not fall within the definition of 'Impaired Property[,]'" and "submit that once a determination has been made that the occurrence arose from an 'accident' the exclusion does not apply by its own terms." Dkt. No. 62 at 5. The Howards do not, however, offer any explanation for why their damages fall outside the definition of "Impaired Property" or why the occurrence should be found to arise from an "accident" (or, more accurately, a "sudden and accidental physical injury"). Their allegations regarding the source of the injury, in contrast, suggest injuries which were neither sudden nor the result of accidental physical injury. *See id.* at 4 (listing injuries, including the need to "treat the standing septic effluent with lime," and loss of use, then stating that "[a]ll of these circumstances resulted from the physical injury to the property caused by the negligent installation of the septic system.").

not covered under the insurance policy issued to Evans by State Auto. State Auto is, therefore, entitled to judgment as a matter of law that it has no obligation to defend or indemnify Evans as to any claims which remain in the State Action. The court, therefore, grants State Auto's motion for summary judgment and denies the Howard's cross motion. The court, further, holds Kenny Evans in default and voluntarily dismisses James Evans without prejudice, based on State Auto's supplemental submissions. The Clerk of Court is directed to enter judgment as no other claims remain in the action.

     IT IS SO ORDERED.

                                    s/ Cameron McGowan Currie  
                                    CAMERON MCGOWAN CURRIE  
                                    UNITED STATES DISTRICT JUDGE

Columbia, South Carolina  
January 22, 2013